IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHABRIA "BRI" WILLIAMS  *On Behalf of Herself and All Other Similarly Situated Individuals*  PLAINTIFF,  v.  GGC-BALTIMORE, LLC D/B/A THE GENTLEMEN'S GOLD CLUB  DEFENDANT. | * * * * * * * * * Case No.: 1:19-cv-274 * * * * * |

**************************************************************************

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND FOR CONDITIONAL CERTIFICATION**

Plaintiff Shabria "Bri" Williams ("Plaintiff") individually and on behalf of other similarly-situated current and former exotic dancers employed by GGC-Baltimore, LLC d/b/a The Gentlemen's Gold Club ("Defendant" or "Gold Club") submits this Memorandum in Support of her Motion for Notice to Potential Plaintiffs and for Conditional Certification as follows:

### I.   SUMMARY

1. Plaintiff has brought this collective action to recover unpaid minimum wage compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

2. During the relevant period of January 2016 and continuing through the present ("the relevant time period"), Gold Club has operated as a gentlemen's club, serving beer, wine, and spirituous beverages, and featuring exotic dancers performing on stage, interacting with customers, and performing private and semi-private dances for customers.

3. At all times during the relevant time period, Gold Club uniformly misclassified Plaintiff and its other exotic dancer employees as independent contractors and not as employees.

4. Arising out of Defendant's common and class-wide misclassification of Plaintiff and other exotic dancers as independent contractors and not as employees, at all times during the relevant time period, Gold Club failed to pay Plaintiff and its other exotic dancer employees any wages at all for hours and shifts worked.

5. Plaintiff and other similarly situated exotic dancers employed at the Gold Club are entitled to unpaid Federal Minimum Wage compensation that Gold Club improperly failed to pay them in violation of the FLSA.

6. Plaintiff and the putative class members have performed the same, or substantially similar, job duties as one another and have been subject to the same FLSA minimum wage violation perpetrated by Defendant on a class-wide basis.

7. As such, Plaintiff asks this Court to permit the issuance of a Court-approved notice and to conditionally certify this matter as a collective action under the FLSA.

8. The threshold is low for conditional certification under FLSA § 216 (b). *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006).

9. At the first stage of the certification process, the Court applies a lenient standard, which requires nothing more than a modest factual showing that the putative class members are similarly situated with respect to job duties and pay provisions. *Id*.

10. Attached hereto, Plaintiff presents to the Court a supporting sworn declaration corroborating the facts alleged in the complaint and reiterated herein in support of conditional certification. *See* Declaration of Plaintiff Shabria "Bri" Williams attached hereto as Exhibit 1 ("Plaintiff Declaration")

11. Defendant likely will argue that conditional certification is not appropriate because Plaintiff and other exotic dancers were not employees but, instead, were independent contractors - - or some other class-wide defense to FLSA minimum wage liability. However, the merits of the case are premature at this conditional certification phase of the case. Instead, the sole issue before the Court at this point is whether the Plaintiff is similarly situated to the putative class members. Gold Club will be permitted to argue the merits should it move to decertify the conditional class later in the litigation.

12. Plaintiff readily meets the minimal burden applicable at this stage. *Choimbol*, 475 F. Supp. 2d at 562. Therefore, conditional certification and Notice to the putative class members is appropriate, and Plaintiffs' Motion should be granted.

## II.    FACTUAL SUPPORT

Plaintiff's Declaration provides the factual support for conditional certification and affirms the following relevant facts:

1. Plaintiff was employed by the Defendant as an exotic dancer at Defendant's Gentlemen's Gold Club in Baltimore, Maryland from about October 2016 through about September 2018.

2. During the period of Plaintiff's employment, Plaintiff regularly and customarily worked about three (3) to five (5) shifts per week.

3. The shifts Plaintiff worked were typically about five (5) to seven (7) hours long.

4. From time to time, Plaintiff worked double shifts and worked ten (10) to twelve (12) hours at the Gentlemen's Gold Club in a single day.

5. During Plaintiff's period of employment, Plaintiff typically worked about twenty (20) to thirty (30) hours per week.

6. From time to time when Plaintiff worked additional shifts or double shifts, Plaintiff worked up to forty (40) hours per week, and in some instances, more than forty (40) hours in a single workweek.

7. At all times during the period of Plaintiff's employment, Defendant had actual knowledge of all hours Plaintiff worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiff's work duties.

8. At no time during Plaintiff's period of employment did Defendant ever pay Plaintiff any wages for hours that she worked each week.

9. At all times throughout the period of Plaintiff's employment, Defendant totally failed to pay wages to all other exotic dancers for work duties performed.

10. At all times throughout the period of Plaintiff's employment, Defendant classified Plaintiff as an independent contractor and not an employee.

11. Based on Plaintiff's information and belief, the reason Defendant did not pay her wages was because Defendant classified Plaintiff as an independent contractor and not as an employee.

12. Based on Plaintiff's information and belief, from at least January 2016 through the present, Defendant has classified all exotic dancers at its Gentlemen's Gold Club as independent contractors and not as employees.

13. Based on Plaintiff's information and belief, Defendant did not pay wages to any exotic dancers at the Gentlemen's Gold Club because Defendant classified the exotic dancers as independent contractors and not as employees.

14. While it is true that Defendant classified the other exotic dancers and Plaintiff as independent contractors, at all times while working for Defendant at the Gentlemen's Gold Club, many

exotic dancers and Plaintiff considered themselves employees of Defendant and that Defendant was their employer.

15. At all times, Defendant controlled all aspects of the job duties all exotic dancers and Plaintiff performed through strictly enforced employment rules.

16. Defendant hired all exotic dancers and Plaintiff and, at all times, had the ability to discipline all dancers, fine all dancers, fire all dancers, and adjust Plaintiff's schedule and the schedule of other dancers.

17. Defendant, at all times, supervised Plaintiff's work duties and the duties of all other exotic dancers to make sure their job performance was of sufficient quality.

18. Defendant, at all times, set and determined the pricing for customers for private and semi-private exotic dancers to ensure that exotic dancers were limited to the set prices set exclusively by Defendant.

19. From time to time, Defendant set or promoted specials or deals for customers like 2-for-1 dancers or discounted dances and exotic dancers and Plaintiff were required to perform for customers in exchange for reduced private dance payments.

20. At all times, all exotic dancers and my pay and opportunity for wages were limited to the pay method set exclusively by Defendant.

21. While it is true that many exotic dancers and Plaintiff requested to work certain shifts each week, Defendant controlled all aspects of setting and enforcing all work schedules.

22. At no time did Plaintiff or any other exotic dancer make more money or enjoy more financial benefits if Defendant was operating successfully and realizing increased or additional profits.

23. At no time did Plaintiff or any other exotic dancer make a financial investment in Defendant or any equipment belonging to Defendant.

24. To perform the work duties that all exotic dancers and Plaintiff performed for Defendant, no exotic dancer had or needed any required certificate, education, or specialized training.

25. At all times, Defendant was in the business of operating a night club featuring exotic dancers and at all times it was Plaintiff's job duty and the job duty of each other exotic dancer, for Defendant, to perform as exotic dancers for Defendant's customers.

26. In addition to failing to pay all exotic dancers and me wages for hours worked, Defendant required all exotic dancers me to pay Defendant a house fee or kickback of $25.00 or more for each shift the other exotic dancers and Plaintiff worked. This house fee or kickback was increased by Defendant, at Defendant's sole discretion, if exotic dancers or Plaintiff arrived late for our shifts at the Gentlemen's Gold Club.

27. Plaintiff is pursuing this lawsuit on behalf of herself and all other similarly situated individuals who performed work duties as exotic dancers for Defendant at Defendant's Gentlemen's Gold Club during the period January 2016 through the final judgment of this case.

28. Other current and former exotic dancers employed by Defendant at the Gentlemen's Gold Club are similarly situated to Plaintiff because each of them were (1) improperly classified as independent contractors; (2) were not paid any wages by Defendant for hours worked; (3) were required to pay per-shift house fee kickback to Defendant for each shift worked; and (4) were not paid wages at or above the Federal Minimum Wage of $7.25 for each hour worked.

29. Plaintiff is substantially similar to other current and former exotic dancers employed by Defendant because all other exotic dancers and Plaintiff are owed (1) a return of all house fee kickback payments made to Defendant for each shift worked; plus (2) payment for all hours worked in an amount equal to the Federal Minimum Wage of $7.25 per hour; plus (3) statutory liquidated damages as

provided by Federal law for Defendant's failure to pay minimum wage compensation as required by Federal law.

30. Based upon Plaintiff's personal knowledge of Defendant and its operations, Plaintiff is confident that Defendant has employed at least fifty (50) current and former exotic dancers at Defendant's Gentlemen's Gold Club in the past three (3) years.

31. Based upon Plaintiff's personal knowledge of Defendant and its operations, Plaintiff is confident that information and records relating to all current and former exotic dancers employed by Defendant are in the possession and control of the Defendant.

32. Other current and former exotic dancer employees at Defendant's Gentlemen's Gold Club deserve to receive notice of this lawsuit and an opportunity to opt-in to this lawsuit to pursue their claims for unpaid minimum wage compensation and statutory damages provided by Federal law.

### III.    REQUEST FOR § 216(B) NOTICE TO POTENTIAL PLAINTIFFS

Plaintiff seeks conditional certification and Court-supervised Notice to all current and former exotic dancers who worked for Gold Club in Baltimore, Maryland from January 2016 to the present. As previously discussed, Plaintiff has met the lenient standards for notice to be issued to Potential Plaintiffs.

**A.    Collective Actions are Favored Under the Law, and the District Court is Authorized to Issue Notice to the Potential Opt-in Plaintiffs.**

An employee alleging violations of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). Thus, "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such collective actions are favored because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of

law and fact," and provide plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170.

Unlike a Rule 23 representative action, plaintiffs in an action under the FLSA must affirmatively join, or opt in, to be covered by the suit. 29 U.S.C. § 216(b); *Thiessen v. General Elec. Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001). Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA grants the Court authority to manage the process of joining such employees in the action, including the power to authorize notice and monitor preparation and distribution of the notice. *Hoffmann-La Roche*, 493 U.S. at 169-73 ("The broad remedial goal of the statute should be enforced to the full extent of its terms."). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff date to expedite disposition of the action." *Id.* at 172; *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 628 (D. Colo. 2002) (conditional certification for notice purposes was appropriate where plaintiffs had made "substantial allegations" and conditional certification would allow "significant economies" to be achieved). The Court is empowered and encouraged to issue notice to Potential Plaintiffs and should do so in this case.

**B.      The Two-Stage Certification Process.**

District Courts considering requests to issue notice to potential plaintiffs use a two-stage approach (sometimes called the *Lusardi* approach) to the certification issue. The two-step approach is the typical manner in which collective actions proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). Courts in the Fourth Circuit have recognized and applied the two-stage approach to FLSA collective actions. *Hargrove v. Ryla Teleservices, Inc.*,

2012 WL 489216 (E.D. Va. 2012) report and recommendation adopted, 2012 WL 463442 (E.D. Va. 2012). The *Hargrove* court described the first stage as follows:

> At the first stage, commonly called the "notice stage," the court decides whether to provide initial notice of the action to potential class members. *Id.* If the court decides to do so, it conditionally certifies the class, and the potential class members may then opt-in to the action. *Id.* This stage occurs before any, or most, discovery has been gathered, so the determination is made "using a fairly lenient standard." *Choimbol*, 475 F.Supp.2d at 562 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). This low standard has been interpreted as "requiring nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Choimbol*, 475 F.Supp. at 562 (quoting *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 400–02 (D.N.J. 1988), aff'd in part, 862 F.2d 439, 444 (3d Cir.1988), aff'd, 494 U.S. 165 (1988)).

*Hargrove*, 2012 WL 489216 at *2-3.

Under the two-stage approach, once the Court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney v. Aramco Services Co.*, 54 F.3d at 1214. Discovery is relevant thereafter, both as to the merits of the case and for the second step in the collective action procedure, where the court evaluates the evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *Id.*

Allowing early notice and full participation by the opt-ins, "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. 392, 406 (D. N.J.), *aff'd*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989). Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action. *Clarke v. Convergys Cust. Mgmt. Group.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005) (notice informs the original parties and the court of the number and identity of persons desiring to participate in the suit). Thus, early notice will

help the court to manage the case because it can "ascertain the contours of the action at the outset." *Hoffman-La Roche*, 493 U.S. at 172-73.

**C.     Plaintiff is Entitled To Notice Based On a Her Showing That She is Similarly Situated to Other Exotic Dancer Employees**.

**1.     The Standard for Notice is "Lenient."**

Because the first step takes place prior to the completion of discovery, the standard for notice is "lenient." *Choimbol*, 475 F. Supp. 2d at 562. To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling,* 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").

"Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (citing *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) ("[W]hether at the first or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim. That is, plaintiffs do not have to show that the employer actually violated the FLSA."); *Longcrier v. HL–A Co*., 595 F. Supp. 2d 1218, 1240–41 (M.D. Ala. 2008) ("To the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate."); *Lynch v. United Svcs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Barrus v. Dick's Sporting Goods, Inc.*, 2006 WL 3373117, at *4 (W.D.N.Y. 2006); *Young v. Cooper Cameron Corp*., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual

violation of law but rather on whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated.").

Only at the second stage, at the close of discovery, may the defendant seek to "decertify" the collective action, at which point the Court may make a "factual determination" as to whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214. The lenient standard applicable at the first stage "typically results in 'conditional certification' of a representative class," to whom notice is sent and who receive an opportunity to "opt in." *Id.*

### 2. At the Notice Stage, Plaintiff Need Only Make Substantial Allegations Supported by a Sworn Statement That Plaintiff and Potential Plaintiffs Are Similarly Situated to One Another.

At the first stage of the two-stage certification approach, courts determine whether Plaintiff and potential opt-ins are "similarly situated" based upon the allegations in a complaint supported by sworn statements.[1] *Mooney*, 54 F.3d at 1213-14; *see also Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996); *Brooks v. Bellsouth Telecom.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling*, 118 F.R.D. at 406-07. The record need only be sufficiently developed to allow court-facilitated notice based upon

---

[1] *See, e.g., Zhao v. Benihana,* 2001 U.S. Dist. LEXIS 10678 at *12-13 (S.D. N.Y. 2001) (one affidavit based on plaintiff's "best knowledge"); *Alba v. Madden Bolt Corporation*, 2002 WL 32639827 (S.D. Tex. 2002)(one affidavit sufficient); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 (E.D. Cal.2005) (allegations in complaint and declaration of the plaintiff demonstrate plaintiff and other class members are similarly situated); *Brown v. Money Tree Mortg. Inc.,* 222 F.R.D. 264, 680 (D. Kan. 2004) (two affidavits); *Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification"); *Reab,* 214 F.R.D. at 628 (allegations in complaint); *Allen v. Marshall Field & Co.,* 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *De Asencio v. Tyson Foods, Inc.,* 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits); *Camper v. Home Quality Mgmt, Inc.,* 200 F.R.D. 516, 519-21 (D. Md. 2000) (sworn testimony from two deponents and two declarations).

substantial allegations or some factual support. *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996). [2]

Here, Plaintiff's Complaint alleges that Defendant failed to comply with the FLSA by misclassifying Plaintiff and the other exotic dancers at Defendant's Baltimore, Maryland Gentlemen's Gold Club as independent contractors rather than as employees and failing to pay any wages for hours worked.  The allegations in the Complaint have been substantiated by Plaintiff's sworn declaration affirming the pertinent facts.  The Complaint allegations and Plaintiff's sworn declaration crystallizes the conclusion that Plaintiff performed the same or similar job duties and worked under the same pay provisions (or rather without any pay) as other exotic dancers at Defendant's Gentlemen's Gold Club who have not yet been notified about the case. *Supra,* at Sec. II.A-II.B; Plaintiff's Declaration.  As such, the Court is presented with sufficient evidence in support of this Motion and requested relief to satisfy the "modest factual showing" necessary for the Court to issue notice. *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

### 3. Plaintiff is "Similarly Situated" to Defendant's Exotic Dancers if She Performed Similar Job Duties Under a Similar Compensation Plan.

"To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar." *Barnett v. Countrywide Credit Indust., Inc*., 2002 WL 1023161 (N.D. Tex. 2002), 2002 WL 1023161, at *1 (internal quotation marks and brackets omitted) *see also Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla. 1994); *Dybach v. State of Fla. Dept. of Corrections.* 942 F.2d 1562, 1567-68 (11th Cir. 1991).

---

[2] *See also Garner*, 802 F. Supp. at 422; *Sperling*, 118 F.R.D. at 407*; Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294 (N.D. Cal. 1991).

**Motion for Notice – Page 12**

The "similarly situated" requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder), Rule 42 (severance), or in Rule 23 (class actions). *Grayson*, 79 F.3d at 1096. While evidence of a single decision, policy, or plan will meet the similarly situated standard, *Sperling,* 118 F.R.D. at 407, a unified policy, plan, or scheme is not required to satisfy the more liberal "similarly situated" requirement of the FLSA. *Grayson,* 79 F.3d at 1096. Accordingly, "[a] court may deny a plaintiff's right to proceed collectively <u>only if</u> the action arises from circumstances <u>purely personal</u> to the plaintiff, and not from any generally applicable rule, policy, or practice." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366 (E.D. La. 2004) (emphasis added, citations omitted).

Where plaintiffs "adequately allege" that the improper practices and "policies are company-wide, . . . notice may be sent company-wide." *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 375 (E.D. Tenn. 2006) (rejecting defendant's argument that notice should be sent only to present and former employees at only three branch locations because Plaintiff's proof related only to those particular branches); *see also Masson v. Ecolab, Inc.*, 2005 WL 2000133 (S.D.N.Y. 2005) (granting companywide notice to preventive maintenance and repair services workers); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197-98 (S.D.N.Y. 2006) (granting company-wide notice).

Further, courts also consider an across-the-board decision to treat a discrete category of employees as exempt to be sufficient to warrant conditional certification and notice to all those in the same job category. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision [to classify employees as exempt] in a single collective action…"); *Kane v. Gage Merchandising Servs., Inc*. 138 F. Supp. 2d 212, 215 (D. Mass. 2001) (where defendant treats a discrete class as exempt,

notice is warranted); *Lynch v. United Services Automobile Association*, 491 F. Supp. 2d 357, 370 (S.D.N.Y. 2007) ("Courts typically authorize …notice upon a simple showing that other employees may also have been subjected to the employers' practice of "misclassifying."); *Patton v. Thompson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (notice granted because plaintiff was classified as exempt and all other employees with the same job title were also classified as exempt). These cases are consistent with the holding by the Supreme Court that notice may be authorized under § 216(b) of FLSA because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. at 170.

Misclassification cases like this one, where the employer wrongly designates an entire group of employees as independent contractors (rather than as employees) and, because of this misclassification, fails to pay any wages, are the quintessential collective action cases. *See*, e.g. *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005), (finding that plaintiffs met their burden for companywide conditional certification by showing that defendants had a policy of classifying all Plaintiffs as exempt, and not paying them overtime); *Geer v. Challenge Fin. Investors Corp.*, 2005 WL 2648054 at *2-4 (D. Kan. 2005) (granting company-wide notice to loan officers who were victims of the same compensation scheme). *See also* cases cited in Sec. III.B, *supra*.

Here, Plaintiff has met the <u>lenient</u> standard of showing that notice to putative Plaintiffs is appropriate. The evidence detailed in the Factual Background section of this Motion (and not repeated here at length) shows that Plaintiff and the putative plaintiffs are victims of the same scheme to deprive them of mandatory FLSA minimum wage compensation. (Factual Background, *supra*). Specifically, Gold Club failed to pay its exotic dancer employees any

wages for hours worked (and still fails to do so) even though Defendant's exotic dancer employees are Defendant's employees entitled to FLSA guaranteed minimum wage compensation. *Supra,* at Sec. II.B-II.C. Consequently, the Court should permit Plaintiff to send a Court-supervised notice to Potential Plaintiffs because they are similarly situated.

### IV.     RELIEF SOUGHT:  CONDITIONAL CERTIFICATION, ISSUANCE OF NOTICE TO POTENTIAL PLAINTIFFS, AND DISCLOSURE OF NAMES AND ADDRESSES.

To facilitate the Notice process and preserve the rights of those who have not yet opted in, Plaintiff seeks Court-supervised notice and conditional certification of the following group of Potential Plaintiffs: **all current and former exotic dancers that worked at Defendant's Gold Club in Baltimore, Maryland at any time from January 2016 through the present.**

Plaintiff asks the Court to approve the proposed Notice filed as an Exhibit to this Motion. This Notice is based on Notices approved and issued in this District, though modified for this particular case.  Plaintiff has also submitted a proposed Consent Form, attached as an Exhibit to this Motion, to be submitted to the Court for those wishing to join this action.  Plaintiff seeks a sixty (60) day opt-in period, measured from the date notice is mailed.

Plaintiff seeks an Order from this Court requiring Defendant to disclose the names, last known home addresses, email addresses (business and home), and home and cellular telephone numbers for the above-defined Potential Plaintiffs.  Plaintiff requests that this information be provided within fifteen (15) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices.

Further, Plaintiff requests the Court allow the proposed Notice and Consent Forms to be mailed and emailed to the class members. *Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (court granted class notice via email and later compelled the employer to produce all email addresses, both personal and work); *see also Davis v. Westgate Planet*

**Motion for Notice – Page 15**

*Hollywood Las Vegas, LLC.*, 2009 WL 102735, at * 15 (D. Nev. 2009) (granting class notice via U.S. mail and email).

Further, Plaintiff requests the Court order that the respective Notice and Consent forms be posted at in the dressing room at Defendant's Gold Club for the entire length of approved opt-in period. *See Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (*citing Malloy v. Richard Fleischman & Assocs. Inc.,* 2009 WL 1585979, at *4 (S.D.N.Y. 2009) (requiring defendant to "post the notice in each workplace where potential collective action members are employed" within ten business days of date of decision); *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile defendants object to the posting of the Notice at their business locations--and request an order prohibiting it--such a practice has been routinely approved in other cases.").

Plaintiff further seeks the specific relief identified in the Proposed Order submitted with this Motion.

## V.     CONCLUSION

Plaintiff has presented detailed allegations, as well as a sworn statement concerning her work as an exotic dancer at Defendant's Gold Club.  Plaintiff has identified an improper misclassification scheme that fails to pay FLSA guaranteed minimum wage compensation to Gold Club's exotic dancer employees.  Because Plaintiff has met her burden to show that similarly-situated individuals exist who have not been notified about the present suit, the Court should enforce the collective action provisions of the FLSA.  The Court should grant Plaintiff's

Motion for the issuance of Notice and enter an Order with the terms set forth in Plaintiff's proposed Order.

        Respectfully submitted,

        /s/ Gregg C. Greenberg
        Gregg C. Greenberg, Bar No. 17291
        ZIPIN, AMSTER & GREENBERG, LLC
        8757 Georgia Avenue, Suite 400
        Silver Spring, Maryland 20910
        Telephone: (301) 587-9373
        Facsimile: (240) 839-9142
        Email:  ggreenberg@zagfirm.com

        *Counsel for Plaintiff and the Class Members*